IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA K. STOLL,<br>    Plaintiff | : <br>: DOCKET NO.:<br>: |
| v. | : CIVIL ACTION LAW<br>: |
| ARMSTRONG FLOORING, INC.<br>    Defendant | :<br>: JURY TRIAL DEMANDED<br>: |

## **COMPLAINT**

Now comes Plaintiff, Joshua K. Stoll (hereinafter "Mr. Stoll"), by and through his counsel, Peggy M. Morcom, Esquire and James T. Podgorney, Esquire of Morcom Law, LLC and files this Complaint of discrimination pursuant to the Americans with Disabilities Act ("ADA") of 1990 (as amended) 42 U.S.C. § 12101, et seq., the Pennsylvania Human Relations Act ("PHRA") 43 P.S. § 951 et seq., retaliation, and violation of the Family Medical Leave Act ("FMLA") 29 U.S.C. § 2601, et seq. and avers as follows:

### **JURSIDICTION AND VENUE**

1. Jurisdiction is appropriate in this Court under 28 U.S.C. §1331 and §1367.

2. Venue is proper because all parties reside or do business in this jurisdiction and all unlawful employment practices complained of occurred in this District.

3. On September 7, 2021, Mr. Stoll dual-filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") and Equal Employment Opportunity Commission ("EEOC") alleging and discrimination pursuant to the PHRA and the ADA.

4. Mr. Stoll exhausted his administrative remedies by filing a Complaint with the PHRC, which was dual-filed with the EEOC on September 7, 2021.

5. A Notice of Right to Sue was issued on August 17, 2022, and was received by Mr. Stoll on August 17, 2022. See Exhibit "A" attached hereto.

## PARTIES

6. Mr. Stoll is an adult individual residing in Leola, Lancaster County, Pennsylvania.

7. AFI Flooring, Inc. (hereinafter "AFI") is a Pennsylvania corporation organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 1067 Dillerville Road, Lancaster, PA 17603. AFI conducts business throughout the Commonwealth of Pennsylvania.

8. Mr. Stoll was hired by Armstrong World Industries, Inc. ("AWI") on or about June 11, 2012, into the position of full-time Production Operator I in the Distribution Center located at 1067 Dillerville Road, Lancaster, PA.

9. AFI was established on April 4, 2016, after AWI separated into two separate standalone entities, AWI and AFI.

10. After the separation of AWI, Mr. Stoll continued in this position with AFI throughout the remainder of his employment with AFI.

11. Patrick Nolan was employed as Plant Manager with AFI, and he was a supervisor to Mr. Stoll, and Shannon Long was employed as Distribution Center Supervisor with AFI, and he was Mr. Stoll's direct supervisor.

12. Mr. Stoll was terminated from his employment with AFI on April 20, 2021.

13. Mr. Stoll was at all times qualified for the position of Production Operator I.

14. Mr. Stoll worked the 3:00 p.m. to 11:00 p.m. shift with AFI.

15. Mr. Stoll's performance at AFI was exemplary, and he was never subjected to any form of discipline.

## COUNT I
## Americans with Disabilities Act (Disability Discrimination)

16. Plaintiff incorporates Paragraphs 1 through 15, as though fully set forth herein.

17. AFI employs in excess of 100 individuals, and AFI is an "employer", as that term is defined under the ADA.

18. Mr. Stoll is an individual with a disability as that term is defined under the ADA.

19. Mr. Stoll's suffers from Ulcerative Colitis and Immune Thrombocytopenic Purpura (ITP), anxiety, and depression (hereinafter "disabilities").

20. Mr. Stoll was diagnosed with Ulcerative Colitis and ITP on or about 2005.

21. Mr. Stoll was diagnosed with anxiety and depression on or about 2019.

22. Ulcerative colitis is an inflammatory bowel disease that causes inflammation and ulcers in the digestive tract and affects the innermost lining of the large intestine and rectum. Symptoms, such as diarrhea, severe abdominal pain, cramping, weight loss, fatigue, and fever, usually develop over time, rather than suddenly. Mr. Stoll suffered from these symptoms while employed with AFI.

23. ITP is a blood disorder characterized by a decrease in the number of platelets in the blood, which help stop bleeding. A decrease in platelets can cause easy bruising, bleeding gums, and internal bleeding. Mr. Stoll suffered from these symptoms during his employment with AFI.

24. Mr. Stoll suffered from anxiety and depression during his employment with AFI.

25. Mr. Stoll was also being treated by his physician for stress reduction, as stress can be a trigger for "flare ups" with his ulcerative colitis and ITP. Mr.

Stoll suffered from stress induced ulcerative colitis and ITP while employed with AFI.

26. Throughout Mr. Stoll's employment with AFI, he suffered from chronic infections related to his disabilities and was required him to be absent from work for medical treatment.

27. Mr. Stoll was required to provide medical documentation and doctor's notes to his supervisor, Long, when he was out of work related to medical treatment for his disabilities.

28. Mr. Stoll's doctor's notes were provided to his AFI's Human Resources Department and Long. As a result, AFI and his Supervisor, Long, were fully aware of Mr. Stoll's medical conditions.

29. Mr. Stoll provided all required medical documentation to AFI throughout his employment.

30. On Wednesday, April 14, 2021, Mr. Stoll called AFI's Call-In Line and left a voicemail message advising he was experiencing medical issues and may not be able to return to work for a period of time (hereinafter "April 14, 2021 message").

31. During the April 14, 2021 message, Mr. Stoll explained that he was seeking to use paid vacation time granted for the rest of the week including Wednesday, Thursday, and Friday.

32. During the April 14, 2021 message, Mr. Stoll also stated that if he could not return to work the following week that he would drop off company property and collect his belongings.

33. During the April 14, 2021 message, Mr. Stoll indicated he was also experience familial issues surrounding the death of his uncle, the health of his parents, and substantial stress surrounding these events which were triggers for his own health issues of Ulcerative Colitis and ITP.

34. Mr. Stoll was concerned that these issues would be ongoing, including his health issues, and that he would be unable to return to work, which is why he found it necessary to provide AFI with the information surrounding these issues ahead of time.

35. Mr. Stoll did not resign his employment in his April 14, 2021 message.

36. On Friday, April 16, 2021, Mr. Stoll called AFI's DC Line and left a voicemail stating that he was waiting to see his physicians in relation to his medical conditions, and that he would be contact Human Resources for assistance with his medical conditions/situation. Mr. Stoll also stated that he intended to return to work as soon as he received assistance with his Family Medical Leave. (hereinafter "April 16, 2021 message")

37. The April 16, 2021 message demonstrates Mr. Stoll's clear intention to return to work as soon as he was physically able.

38. No representative with AFI returned April 16, 2021 message.

39. Mr. Stoll did not resign his employment in his message of April 16, 2021.

40. On Monday, April 19, 2021, Mr. Stoll again placed a call to AFI via the Human Resources Line, again he set forth is medical issues and familial medical issues/situation. Mr. Stoll also stated that he was seeking help from Human Resources. (hereinafter "April 19, 2021 message").

41. No one from AFI's Human Resources Department returned Mr. Stoll's April 19, 2021 message.

42. Mr. Stoll did not resign his employment in his April 19, 2021 message.

43. On Tuesday, April 20, 2021, Mr. Stoll arrived to the plant at approximately 1:00p.m. before his scheduled shift for the purpose of meeting with Human Resources.

44. Upon arrival to the plant on April 20, 2021, Mr. Stoll went through the CVL turnstile entrance and presented to the Human Resources Department to discuss the issues that he had set forth in his April 14, 16, and 19, 2021 messages.

45. On April 20, 2021, Mr. Stoll spoke with Human Resources Manager, Brittany Fritz ("Fritz"), regarding his family's health problems and his own medical issues. (hereinafter "April 20, 2021 meeting").

46. During the April 20, 2021 meeting, Mr. Stoll again asked AFI via Fritz for help and explained he needed to see his doctors and take a few days off to help with familial issues and seek further help for his own health issues. Fritz responded, "I don't know what to tell you. I'm sorry. I was just getting ready to call you. I processed your resignation once I heard you got a new job."

47. During the April 20, 2021 meeting, Fritz advised Mr. Stoll that she intended to contacting the Processing Department to see if her email regarding his termination could be reversed. Fritz advised Mr. Stoll that she would call him the following day, April 21, 2021. Fritz also told Mr. Stoll that he could reapply for employment. Mr. Stoll attempted contacting Fritz on multiple occasions without response.

48. At the conclusion of the April 20, 2021 meeting, Fritz advised Mr. Stoll to go home.

49. Mr. Stoll did not have another job, as stated by Fritz.

50. Mr. Stoll's April 14, 16, and 19, 2021 messages demonstrated his intent to return to work once physically able to do so.

51. Mr. Stoll did not resign from his employment during the April 20, 2022 meeting with Fritz.

52. After the April 20, 2021 meeting, Fritz intentionally never contacted Mr. Stoll as she stated during the meeting.

53. In April 2021, AFI intentionally failed to engage in the interactive process with Mr. Stoll as required under the ADA.

54. Under the ADA, a leave of absence that is not of an indefinite duration is considered a reasonable accommodation.

55. In April of 2021, AFI failed to provide Mr. Stoll a reasonable accommodation (leave of absence) as a result of his medical conditions.

56. Mr. Stoll engaged in a protected activity - requesting an accommodation based on his disabilities in the form of medical leave of absence.

57. During his employment with AFI, Mr. Stoll previously requested and received time off for his medical conditions.

58. AFI intentionally failed to engage in the interactive process required under the ADA and instead terminated his employment.

59. AFI intentionally terminated Mr. Stoll's employment as a result of his disabilities and request for an accommodation under the ADA.

60. On or about June of 2021, Mr. Stoll learned that Nolan stated, "I would never re-hire him."

61. In July of 2021, Mr. Stoll reapplied for the position of Warehouse Associate, was interviewed by Sarah Schneider (hereinafter "Schneider"), Intern and was advised by AFI's Human Resources and Schneider that his interview went well and that it "sounded like a good fit." Mr. Stoll was also advised by Schneider that AFI would follow up with him.

62. Despite Schneider advising Mr. Stoll that his interview went well, Mr. Stoll received an email stating that AFI was not going to consider him for re-hire.

63. On August 20, 2021, Mr. Stoll was also denied employment with Armstrong World Industries, one of AFI's sister companies, for a position at the ceiling plant.

64. Mr. Stoll was advised by Beth Marie Torres (hereinafter "Torres") that his resume was "impressive," his interview "went well," he was qualified for the position, and despite his multiple references from current AFI employees, Mr. Stoll was not rehired.

65. Mr. Stoll later discovered that Torres was a friend and co-worker of Fritz.

66. AFI and its management intentionally acted in such a manner to freeze Mr. Stoll's applications for employment as a result of Mr. Stoll's disabilities and request for medical leave under the ADA.

67. The acts and omissions of AFI and management were intentional and willful.

68. As a direct and/or proximate result of the above-described actions, Mr. Stoll suffered emotional and mental injuries, including but not limited to past and present pain and suffering, humiliation, anxiety, and embarrassment.

69. As a direct and proximate result of the above-described actions, Mr. Stoll suffered financial injury, including but not limited to future loss of earnings, loss of earning potential, loss of benefits, loss of retirement benefits.

70. As a direct and proximate result of the above-described conduct, Mr. Stoll suffered professional injuries including, but not limited to, his professional reputation, professional development and loss of potential promotions, loss of pension and retirement benefits.

71. As a direct and proximate result of the above-described conduct, Mr. Stoll is entitled to punitive damages.

### COUNT II
### Pennsylvania Human Relations Act (Disability Discrimination)

72. Plaintiff incorporates paragraphs 1 – 71, as though fully set forth herein.

73. Mr. Stoll is an "employee" as that term is defined under the PHRA.

74. AFI employs four (4) or more employees and is an "employer" as that term is defined under the PHRA.

75. The acts and omissions of AFI and its management as incorporated herein were discriminatory against Mr. Stoll based upon his disabilities.

76. AFI and its management intentionally acted in such a manner to freeze Mr. Stoll's applications for employment as a result of Mr. Stoll's disabilities and request for medical leave under the PHRA

77. The actions of AFI and its management were intentional and willful.

78. As a direct and/or proximate result of the above-described actions, Mr. Stoll suffered emotional and mental injuries, including but not limited to past and present pain and suffering, humiliation, anxiety, and embarrassment.

79. As a direct and proximate result of the above-described actions, Mr. Stoll suffered financial injury, including but not limited to future loss of earnings, loss of earning potential, loss of benefits, loss of retirement benefits.

80. As a direct and proximate result of the above-described conduct, Mr. Stoll suffered professional injuries including, but not limited to, his professional reputation, professional development and loss of potential promotions, loss of pension and retirement benefits.

## COUNT III
## Family Medical Leave Act

81. Plaintiff incorporates paragraphs 1 through 80, as though fully set forth herein.

82. Mr. Stoll was employed by AFI for at least 12 months during the 12-month period immediately preceding his need for family medical leave.

83. Mr. Stoll worked at least 1,250 hours during the 12-month period immediately preceding this need for family medical leave.

84. AFI employed 50 or more employees during Mr. Stoll's employment, and is an "employer" as that term is defined under the FMLA.

85. Mr. Stoll was eligible to receive 12 weeks of unpaid leave per year for his own serious health condition.

86. Mr. Stoll suffers from the following "serious health conditions" as that term is defined under the FMLA: ulcerative colitis, ITP, chronic infections as result of the same, anxiety, stress, and depression, and AFI knew of his disabilities and/or perceived Mr. Stoll as suffering from disabilities.

87. Mr. Stoll was eligible to take his 12 weeks of FMLA leave intermittently or consecutively.

88. AFI and its management was aware of Mr. Stoll's need for medical leave and previously accepted his physician's notes.

89. AFI terminated Mr. Stoll's employment when it was aware that he more likely than required medical leave under the FMLA.

90. AFI failed to provide Mr. Stoll with the notices required to be provided to employees who may need leave for their own or another family members "serious health condition" as required under the FMLA.

91. AFI intentionally interfered with Mr. Stoll's rights under the FMLA.

92. AFI and its management intentionally acted in such a manner to freeze Mr. Stoll's applications for employment as a result of Mr. Stoll's disabilities and request for medical leave under the FMLA.

93. The acts and omissions of AFI and its management as incorporated herein were in violation of the FMLA.

94. The actions of AFI and its management were intentional and willful.

95. As a direct and/or proximate result of the above-described actions, Mr. Stoll suffered emotional and mental injuries, including but not limited to past and present pain and suffering, humiliation, anxiety, and embarrassment.

96. As a direct and proximate result of the above-described actions, Mr. Stoll suffered financial injury, including but not limited to future loss of earnings, loss of earning potential, loss of benefits, loss of retirement benefits.

97. As a direct and proximate result of the above-described conduct, Mr. Stoll suffered professional injuries including, but not limited to, his professional reputation, professional development and loss of potential promotions, loss of pension and retirement benefits.

## COUNT IV
### Retaliation under the ADA, PHRA, and FMLA

98. Plaintiff incorporates paragraphs 1 through 97, as though fully set forth herein.

99. On April 14, 16, 19, and 20, 2022, Mr. Stoll engaged in a protected activity when he requested an accommodation based on his disabilities in the form of leave of absence under the ADA on April 14, 16, 19, and 20, 2022.

100. On April 14, 16, 19, and 20, 2022, Mr. Stoll engaged in a protected activity when he requested a leave of absence as a result of his disabilities and the medical conditions of his parents under the FMLA.

101. On or about April 20, 2022, AFI and its management terminated Mr. Stoll's employment.

102. AFI terminated Mr. Stoll's employment due to his taking intermittent time off for medical appointments and the need for additional leave due to his medical conditions.

103. Mr. Stoll was subjected to unlawful discrimination and retaliation under the ADA when AFI terminated Mr. Stoll's employment due to his taking intermittent time off for medical appointments and the need for additional leave due to his medical conditions.

104. As a direct and/or proximate result of the above-described actions, Mr. Stoll suffered emotional and mental injuries, including but not limited to past and present pain and suffering, humiliation, anxiety, and embarrassment.

105. As a direct and proximate result of the above-described actions, Mr. Stoll suffered financial injury, including but not limited to future loss of earnings, loss of earning potential, loss of benefits, loss of retirement benefits.

106. As a direct and proximate result of the above-described conduct, Mr. Stoll suffered professional injuries including, but not limited to, his professional reputation, professional development and loss of potential promotions, loss of pension and retirement benefits.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiff, Joshua K. Stoll, respectfully requests this Honorable Court to enter Judgment in his favor and against Defendant for damages in an amount in excess of $75,000.00, plus interests and costs of suit as well as the following:

(a) Exercise jurisdiction over this matter;

(b) Order Defendant to reimburse Plaintiff for all salary and benefits lost by her as a result of Defendant's actions, in an amount in excess of $75,000.00, including but not limited to front pay, back pay, and compensatory damages;

(c) Award Plaintiff punitive damages under the Americans with Disabilities Act;

(d) Award Plaintiff all costs of this action, including reasonable attorney's fees;

(e) Award Plaintiff such other and further relief as this court deems just proper and equitable.

Respectfully submitted,

s/Peggy M. Morcom
Peggy M. Morcom, Esquire
Atty. ID No.: 92463
Morcom Law, LLC
226 W. Chocolate Avenue
Hershey, PA 17033
(717) 298-1907
pmorcom@morcomlaw.com
Counsel for Plaintiff

s/James T. Podgorney
James T. Podgorney, Esquire
Atty. ID No.: 315848
Morcom Law, LLC
226 W. Chocolate Avenue
Hershey, PA 17033
(717) 298-1907
jpodgorney@morcomlaw.com
Counsel for Plaintiff

Date: 11/2/2022

# VERIFICATION

The undersigned hereby verifies that the statements in the foregoing document are based upon information which has been furnished to counsel by me and information which has been gathered by counsel in the preparation of this lawsuit. The language of the foregoing document is that of counsel and not my own. I have read the foregoing document and to the extent that it is based upon information which I have given to counsel, it is true and correct to the best of my knowledge, information and belief. To the extent that the contents of the foregoing document are that of counsel, I have relied upon my counsel in making this verification. The undersigned also understands that the statements therein are made subject to the penalties of 18 Pa.C.S §4904 relating to unsworn falsification to authorities.

_____
Joshua K. Stoll

Date: 11-2-22